1　STEPHANIE S. CHRISTENSEN
　　Acting United States Attorney
2　SCOTT M. GARRINGER
　　Assistant United States Attorney
3　Chief, Criminal Division
　　RANEE A. KATZENSTEIN (Cal. Bar No. 187111)
4　Assistant United States Attorney
　　Chief, Major Frauds Section
5　ALEXANDER B. SCHWAB (Cal. Bar No. 283421)
　　Assistant United States Attorney
6　Deputy Chief, Major Frauds Section
　　　　　1100 United States Courthouse
7　　　　　312 North Spring Street
　　　　　Los Angeles, California 90012
8　　　　　Telephone: (213) 894-2432/1259
　　　　　Facsimile: (213) 894-6269
9　　　　　E-mail:　ranee.katzenstein@usdoj.gov
　　　　　　　　　　alexander.schwab@usdoj.gov
10
　　Attorneys for Plaintiff
11　UNITED STATES OF AMERICA

12　　　　　　　　　　UNITED STATES DISTRICT COURT

13　　　　　　　FOR THE CENTRAL DISTRICT OF CALIFORNIA

14　UNITED STATES OF AMERICA,　　　　No. CR 20-522-MWF
　　　　　　　　　　　　　　　　　　　No. CR 21-379-MWF
15　　　　　Plaintiff,
　　　　　　　　　　　　　　　　　　　PLEA AGREEMENT FOR DEFENDANT
16　　　　　v.　　　　　　　　　　　　FONTRELL ANTONIO BAINES

17　FONTRELL ANTONIO BAINES,
　　　aka "Nuke Bizzle,"
18
　　　　　Defendant.
19

20　　　　1.　This constitutes the plea agreement between FONTRELL

21　ANTONIO BAINES, also known as "Nuke Bizzle," ("defendant") and the

22　United States Attorney's Office for the Central District of

23　California (the "USAO") in the above-captioned cases.  This agreement

24　is limited to the USAO and cannot bind any other federal, state,

25　local, or foreign prosecuting, enforcement, administrative, or

26　regulatory authorities.

27　///

28　///

1                      DEFENDANT'S OBLIGATIONS

2       2.    Defendant agrees to:

3             a.    At the earliest opportunity requested by the USAO and

4   provided by the Court, (i) appear and plead guilty to count one of

5   the indictment in <u>United States v. Fontrell Antonio Baines</u>, CR No.

6   20-522-MWF, which charges defendant with mail fraud, in violation of

7   18 U.S.C. § 1341; and (ii) appear and plead guilty to the sole count

8   of the indictment in <u>United States v. Fontrell Antonio Baines</u>, CR No.

9   21-379-MWF, which charges defendant with unlawful possession of a

10  firearm and ammunition by a previously convicted felon, in violation

11  of 18 U.S.C. § 922(g)(1).

12            b.    Not contest facts agreed to in this agreement.

13            c.    Abide by all agreements regarding sentencing contained

14  in this agreement.

15            d.    Appear for all court appearances, surrender as ordered

16  for service of sentence, obey all conditions of any bond, and obey

17  any other ongoing court order in this matter.

18            e.    Not commit any crime; however, offenses that would be

19  excluded for sentencing purposes under United States Sentencing

20  Guidelines ("USSG" or "Sentencing Guidelines") § 4A1.2(c) are not

21  within the scope of this agreement.

22            f.    Be truthful at all times with the United States

23  Probation and Pretrial Services Office and the Court.

24            g.    Pay the applicable special assessments at or before

25  the time of sentencing unless defendant has demonstrated a lack of

26  ability to pay such assessments.

27            h.    Defendant agrees that any and all restitution/fine

28  obligations ordered by the Court will be due in full and immediately.

The government is not precluded from pursuing, in excess of any payment schedule set by the Court, any and all available remedies by which to satisfy defendant's payment of the full financial obligation, including referral to the Treasury Offset Program.

i.   Complete the Financial Disclosure Statement on a form provided by the USAO and, within 30 days of defendant's entry of a guilty plea, deliver the signed and dated statement, along with all of the documents requested therein, to the USAO by either email at usacac.FinLit@usdoj.gov (preferred) or mail to the USAO Financial Litigation Section at 300 N. Los Angeles St., Suite 7516, Los Angeles, CA 90012.

j.   Authorize the USAO to obtain a credit report upon returning a signed copy of this plea agreement.

k.   Consent to the USAO inspecting and copying all of defendant's financial documents and financial information held by the United States Probation and Pretrial Services Office.

l.   Allow funds previously seized in connection with this matter, which total at least $56,750, unless subject to forfeiture, to be applied by the Court to pay, in order of application, any special assessments, criminal fines, and costs that defendant is required to pay, and execute papers as necessary to accomplish this application.

3.   Defendant further agrees:

a.   To forfeit all right, title, and interest in and to any and all monies, properties, and/or assets of any kind, derived from or acquired as a result of, or used to facilitate the commission of, or involved in the illegal activity to which defendant is

3

1   pleading guilty, specifically including, but not limited to the

2   following:

3                   i.   One Glock GMBH model 31Gen4, .357 caliber semi-

4   automatic pistol, bearing serial number BPPA672; and

5                   ii.  Approximately 14 rounds of Sellier & Bellot .357

6   SIG-caliber ammunition (the "Forfeitable Property").To the Court's

7   entry of an order of forfeiture at or before sentencing with respect

8   to the Forfeitable Property and to the forfeiture of the property.

9           c.   That the Preliminary Order of Forfeiture shall become

10  final as to the defendant upon entry.

11          d.   To take whatever steps are necessary to pass to the

12  United States clear title to the Forfeitable Property, including,

13  without limitation, the execution of a consent decree of forfeiture

14  and the completing of any other legal documents required for the

15  transfer of title to the United States.

16          e.   Not to contest any administrative forfeiture

17  proceedings or civil judicial proceedings commenced against the

18  Forfeitable Property.  If defendant submitted a claim and/or petition

19  for remission for all or part of the Forfeitable Property on behalf

20  of himself or any other individual or entity, defendant shall and

21  hereby does withdraw any such claims or petitions, and further agrees

22  to waive any right he may have to seek remission or mitigation of the

23  forfeiture of the Forfeitable Property.  Defendant further waives any

24  and all notice requirements of 18 U.S.C. § 983(a)(1)(A) and/or

25  requirements of the Government to commence forfeiture actions

26  pursuant to 18 U.S.C. § 924(d)(1).

27          f.   Not to assist any other individual in any effort

28  falsely to contest the forfeiture of the Forfeitable Property.

1         g.   Not to claim that reasonable cause to seize the

2  Forfeitable Property was lacking.

3         h.   To prevent the transfer, sale, destruction, or loss of

4  the Forfeitable Property to the extent defendant has the ability to

5  do so.

6         i.   That forfeiture of Forfeitable Property shall not be

7  counted toward satisfaction of any special assessment, fine,

8  restitution, costs, or other penalty the Court may impose.

9  With respect to any criminal forfeiture ordered as a result of this

10 plea agreement, defendant waives: (1) the requirements of Federal

11 Rules of Criminal Procedure 32.2 and 43(a) regarding notice of the

12 forfeiture in the charging instrument, announcements of the

13 forfeiture at sentencing, and incorporation of the forfeiture in the

14 judgment; (2) all constitutional and statutory challenges to the

15 forfeiture (including by direct appeal, habeas corpus or any other

16 means); and (3) all constitutional, legal, and equitable defenses to

17 the forfeiture of the Forfeitable Property in any proceeding on any

18 grounds including, without limitation, that the forfeiture

19 constitutes an excessive fine or punishment.  Defendant acknowledges

20 that the forfeiture of the Forfeitable Property is part of the

21 sentence that may be imposed in this case and waives any failure by

22 the Court to advise defendant of this, pursuant to Federal Rule of

23 Criminal Procedure 11(b)(1)(J), at the time the Court accepts

24 defendant's guilty plea.

25        j.   Not to contest any administrative forfeiture

26 proceedings or civil judicial proceedings commenced against the

27 following items:

28

1          i.    $49,734 in U.S. currency seized by the Las Vegas

2     Metropolitan Police Department on September 23, 2020; and

3          ii.   $7,016 in U.S. currency seized by the Department

4     of Labor-Office of Inspector General on October 16, 2020 (the "Seized

5     Currency").

6          k.    If defendant submitted a claim and/or petition for

7     remission for all or part of the Seized Currency on behalf of himself

8     or any other individual or entity, defendant shall and hereby does

9     withdraw any such claims or petitions, and further agrees to waive

10    any right he may have to seek remission or mitigation of the

11    forfeiture of the Seized Currency.  Defendant further waives any and

12    all notice requirements of 18 U.S.C. § 983(a)(1)(A) regarding the

13    Seized Currency.

14         l.    Not to assist any other individual in any effort

15    falsely to contest the forfeiture of the Seized Currency.

16         m.    Not to claim that reasonable cause to seize the Seized

17    Currency was lacking.

<u>THE USAO'S OBLIGATIONS</u>

18

19    4.    The USAO agrees to:

20         a.    Not contest facts agreed to in this agreement.

21         b.    Except for criminal tax violations (including

22    conspiracy to commit such violations chargeable under 18 U.S.C.

23    § 371), not further criminally prosecute defendant for violations of

24    18 U.S.C. §§ 1341, 1343, 1344, and 1957 arising out of defendant's

25    conduct described in the agreed-to factual basis set forth Exhibit A.

26    Defendant understands that the USAO is free to criminally prosecute

27    defendant for any other unlawful past conduct or any unlawful conduct

28    that occurs after the date of this agreement.  Defendant agrees that

6

1  at the time of sentencing the Court may consider the uncharged

2  conduct in determining the applicable Sentencing Guidelines range,

3  the propriety and extent of any departure from that range, and the

4  sentence to be imposed after consideration of the Sentencing

5  Guidelines and all other relevant factors under 18 U.S.C. § 3553(a).

6       c.   Abide by all agreements regarding sentencing contained

7  in this agreement.

8       d.   At the time of sentencing, move to dismiss the

9  remaining counts of the indictment as against defendant.  Defendant

10 agrees, however, that at the time of sentencing the Court may

11 consider any dismissed charges in determining the applicable

12 Sentencing Guidelines range, the propriety and extent of any

13 departure from that range, and the sentence to be imposed.

14      e.   At the time of sentencing, provided that defendant

15 demonstrates an acceptance of responsibility for the offenses up to

16 and including the time of sentencing, recommend a two-level reduction

17 in the applicable Sentencing Guidelines offense level, pursuant to

18 USSG § 3E1.1, and recommend and, if necessary, move for an additional

19 one-level reduction if available under that section.

20                       NATURE OF THE OFFENSES

21     5.   Defendant understands that for defendant to be guilty of

22 the crime charged in count one of the indictment in case number CR

23 20-522-MWF, that is, mail fraud, in violation of Title 18, United

24 States Code, Section 1341, the following must be true:

25      a.   First, the defendant knowingly participated in a

26 scheme or plan to defraud, or a scheme or plan for obtaining money or

27 property by means of false or fraudulent pretenses, representations,

28 or promises;

7

1        b.   Second, the statements made or facts omitted as part

2   of the scheme were material, that is, they had a natural tendency to

3   influence, or were capable of influencing, a person to part with

4   money or property;

5        c.   Third, the defendant acted with the intent to defraud,

6   that is, the intent to deceive and cheat; and

7        d.   Fourth, the defendant used, or caused to be used, the

8   mails to carry out or attempt to carry out an essential part of the

9   scheme.  A mailing is caused when one knows that the mails will be

10  used in the ordinary course of business or when one can reasonably

11  foresee such use.  It does not matter whether the material mailed was

12  itself false or deceptive so long as the mail was used as a part of

13  the scheme, nor does it matter whether the scheme or plan was

14  successful or that any money or property was obtained.

15       6.   Defendant understands that for defendant to be guilty of

16  the crime charged in the sole count of the indictment in case number

17  CR 21-379-MWF, that is, unlawful possession of a firearm and

18  ammunition by a previously convicted felon, in violation of 18 U.S.C.

19  § 922(g)(1), the following must be true:

20       First, the defendant knowingly possessed a Glock GMBH model

21  31Gen4, .357 caliber semi-automatic pistol, bearing serial number

22  BPPA672, or Sellier & Bellot .357 SIG-caliber ammunition;

23       Second, the item possessed, namely, the Glock GMBH model

24  31Gen4, .357 caliber semi-automatic pistol or the Sellier & Bellot

25  ammunition, had been transported from one state to another or between

26  a foreign nation and the United States;

27       Third, at the time the defendant possessed the item,

28  namely, the Glock GMBH model 31Gen4, .357 caliber semi-automatic

1  pistol or the Sellier & Bellot ammunition, the defendant had been
2  convicted of a crime punishable by imprisonment for a term exceeding
3  one year; and

4        Fourth, at the time the defendant possessed the item,
5  namely, the Glock GMBH model 31Gen4, .357 caliber semi-automatic
6  pistol or the Sellier & Bellot ammunition, the defendant knew that he
7  had been convicted of a crime punishable by imprisonment for a term
8  exceeding one year.

9  PENALTIES AND RESTITUTION

10      7.   Defendant understands that the statutory maximum sentence
11  that the Court can impose for a violation of 18 U.S.C. § 1341, is: a
12  20-year term of imprisonment; a 3-year period of supervised release;
13  a fine of $250,000 or twice the gross gain or gross loss resulting
14  from the offense, whichever is greatest; and a mandatory special
15  assessment of $100.

16      8.   Defendant understands that the statutory maximum sentence
17  that the Court can impose for a violation of 18 U.S.C. § 922(g)(1),
18  is: a 10-year term of imprisonment; a 3-year period of supervised
19  release; a fine of $250,000 or twice the gross gain or gross loss
20  resulting from the offense, whichever is greatest; and a mandatory
21  special assessment of $100.

22      9.   Defendant understands, therefore, that the total maximum
23  sentence for both offenses to which defendant is pleading guilty is:
24  30 years' imprisonment; a 3-year period of supervised release; a fine
25  of $500,000 or twice the gross gain or gross loss resulting from the
26  offenses, whichever is greatest; and a mandatory special assessment
27  of $200.

28

9

1     10.   Defendant understands that defendant will be required to
2  pay full restitution to the victims of the offenses to which
3  defendant is pleading guilty.   Defendant agrees that, in return for
4  the USAO's compliance with its obligations under this agreement, the
5  Court may order restitution to persons other than the victims of the
6  offenses to which defendant is pleading guilty and in amounts greater
7  than those alleged in the counts to which defendant is pleading
8  guilty.   In particular, defendant agrees that the Court may order
9  restitution to any victim of any of the following for any losses
10  suffered by that victim as a result: (a) any relevant conduct, as
11  defined in USSG § 1B1.3, in connection with the offenses to which
12  defendant is pleading guilty; and (b) any counts dismissed pursuant
13  to this agreement as well as all relevant conduct, as defined in USSG
14  § 1B1.3, in connection with those counts.   The parties currently
15  believe that the applicable amount of restitution is approximately
16  $704,760, but recognize and agree that this amount could change based
17  on facts that come to the attention of the parties prior to
18  sentencing.
19     11.   Defendant understands that supervised release is a period
20  of time following imprisonment during which defendant will be subject
21  to various restrictions and requirements.   Defendant understands that
22  if defendant violates one or more of the conditions of any supervised
23  release imposed, defendant may be returned to prison for all or part
24  of the term of supervised release authorized by statute for the
25  offense that resulted in the term of supervised release, which could
26  result in defendant serving a total term of imprisonment greater than
27  the statutory maximum stated above.
28

12. Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition. Defendant understands that the convictions in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license. Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty pleas.

13. Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the convictions in this case make it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States. Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case. Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including his attorney or the Court, can predict to an absolute certainty the effect of his convictions on his immigration status. Defendant nevertheless affirms that he wants to plead guilty

1   regardless of any immigration consequences that his pleas may entail,

2   even if the consequence is automatic removal from the United States.

3                                FACTUAL BASIS

4       14.  Defendant admits that defendant is, in fact, guilty of the

5   offenses to which defendant is agreeing to plead guilty.  Defendant

6   and the USAO agree to the statement of facts attached to this

7   Agreement as Exhibit A and agree that this statement of facts is

8   sufficient to support pleas of guilty to the charges described in

9   this agreement and to establish the Sentencing Guidelines factors set

10  forth in paragraph 16 below but is not meant to be a complete

11  recitation of all facts relevant to the underlying criminal conduct

12  or all facts known to either party that relate to that conduct.

13                             SENTENCING FACTORS

14      15.  Defendant understands that in determining defendant's

15  sentence the Court is required to calculate the applicable Sentencing

16  Guidelines range and to consider that range, possible departures

17  under the Sentencing Guidelines, and the other sentencing factors set

18  forth in 18 U.S.C. § 3553(a).  Defendant understands that the

19  Sentencing Guidelines are advisory only, that defendant cannot have

20  any expectation of receiving a sentence within the calculated

21  Sentencing Guidelines range, and that after considering the

22  Sentencing Guidelines and the other § 3553(a) factors, the Court will

23  be free to exercise its discretion to impose any sentence it finds

24  appropriate up to the maximum set by statute for the crimes of

25  conviction.

26      16.  Defendant and the USAO agree to the following applicable

27  Sentencing Guidelines factors:

28  Mail Fraud (CR 20-522-MWF)

| | | |
|---|---|---|
| Base Offense Level: | 7 | USSG § 2B1.1(a)(1) |

*Specific Offense Characteristics*

| | | |
|---|---|---|
| Loss greater than $550,000 but less than $1,500,000 | +14 | USSG § 2B1.1(b)(1)(H) |
| More than 10 victims | +2 | USSG § 2B1.1(b)(2)(A)(i) |
| Unauthorized use of means of ID to obtain other means of ID and/or possession of means of ID that were unlawfully produced by use of another means of ID | +2 | USSG § 2B1.1(b)(11)(C) |

Felon In Possession of Firearm/Ammunition (CR 21-379-MWF)

| | | |
|---|---|---|
| Base Offense Level: | 20 | USSG § 2K2.1(a)(4)(A) |

Multiple Count Adjustment

| | | |
|---|---|---|
| 1 ½ units | +1 | USSG § 3D1.4 |

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate, with the exception that the government agrees not to seek an adjustment under USSG § 2B1.1(b)(12). With respect to the offense charged in the sole count of the indictment in case number CR 21-379-MWF, the base offense level set forth above is based on information currently known to the government regarding defendant's criminal history.  Defendant understands and agrees that defendant's base offense level could be increased if defendant is an armed career criminal under USSG §§ 4B1.4 and 18 U.S.C. § 924(e), or if defendant has additional prior conviction(s) for either a crime of violence or a controlled substance offense under USSG § 2K2.1.  If defendant's base offense level is so altered, defendant and the USAO will not be bound by the

base offense level agreed to above or the multiple count adjustment agreed to above.

17. Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

18. Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

19. Defendant understands that by pleading guilty, defendant gives up the following rights:

        a.   The right to persist in a plea of not guilty.

        b.   The right to a speedy and public trial by jury.

        c.   The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial. Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

        d.   The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

        e.   The right to confront and cross-examine witnesses against defendant.

        f.   The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

1        g.   The right not to be compelled to testify, and, if

2  defendant chose not to testify or present evidence, to have that

3  choice not be used against defendant.

4        h.   Any and all rights to pursue any affirmative defenses,

5  Fourth Amendment or Fifth Amendment claims, and other pretrial

6  motions that have been filed or could be filed.

7  <u>WAIVER OF APPEAL OF CONVICTION</u>

8     20.  Defendant understands that, with the exception of an appeal

9  based on a claim that defendant's guilty pleas were involuntary, by

10  pleading guilty defendant is waiving and giving up any right to

11  appeal defendant's convictions on the offenses to which defendant is

12  pleading guilty.  Defendant understands that this waiver includes,

13  but is not limited to, arguments that the statutes to which defendant

14  is pleading guilty are unconstitutional, and any and all claims that

15  the statement of facts provided herein is insufficient to support

16  defendant's pleas of guilty.

17  <u>LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE</u>

18     21.  Defendant agrees that, provided the Court imposes a term of

19  imprisonment within or below the range corresponding to an offense

20  level of 23 and the criminal history category calculated by the

21  Court, defendant gives up the right to appeal all of the following:

22  (a) the procedures and calculations used to determine and impose any

23  portion of the sentence; (b) the term of imprisonment imposed by the

24  Court; (c) the fine imposed by the Court, provided it is within the

25  statutory maximum; (d) to the extent permitted by law, the

26  constitutionality or legality of defendant's sentence, provided it is

27  within the statutory maximum; (e) the amount and terms of any

28  restitution order, provided it requires payment of no more than

$704,760; (f) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (g) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

22.  The USAO agrees that, provided (a) all portions of the sentence are at or below the statutory maximum specified above and (b)  the Court imposes a term of imprisonment within or above the range corresponding to an offense level of 23 and the criminal history category calculated by the Court, the USAO gives up its right to appeal any portion of the sentence, with the exception that the USAO reserves the right to appeal the amount of restitution ordered if that amount is less than $704,760.

## RESULT OF WITHDRAWAL OF GUILTY PLEA

23.  Defendant agrees that if, after entering guilty pleas pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty pleas on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy

trial claim with respect to any such action, except to the extent
that such defenses existed as of the date of defendant's signing this
agreement.

### RESULT OF VACATUR, REVERSAL OR SET-ASIDE

24.  Defendant agrees that if either count of conviction is
vacated, reversed, or set aside, the USAO may: (a) ask the Court to
resentence defendant on the remaining count of conviction, with both
the USAO and defendant being released from any stipulations regarding
sentencing contained in this agreement, (b) ask the Court to void the
entire plea agreement and vacate defendant's guilty plea on the
remaining count of conviction, with both the USAO and defendant being
released from all their obligations under this agreement, or
(c) leave defendant's remaining conviction, sentence, and plea
agreement intact.  Defendant agrees that the choice among these three
options rests in the exclusive discretion of the USAO.

### EFFECTIVE DATE OF AGREEMENT

25.  This agreement is effective upon signature and execution of
all required certifications by defendant, defendant's counsel, and an
Assistant United States Attorney.

### BREACH OF AGREEMENT

26.  Defendant agrees that if defendant, at any time after the
effective date of this agreement, knowingly violates or fails to
perform any of defendant's obligations under this agreement ("a
breach"), the USAO may declare this agreement breached.  All of
defendant's obligations are material, a single breach of this
agreement is sufficient for the USAO to declare a breach, and
defendant shall not be deemed to have cured a breach without the
express agreement of the USAO in writing.  If the USAO declares this

17

agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered guilty pleas pursuant to this agreement, defendant will not be able to withdraw the guilty pleas, and (b) the USAO will be relieved of all its obligations under this agreement.

27. Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a. Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b. Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c. Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

18

COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES

OFFICE NOT PARTIES

28.   Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

29.   Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 16 are consistent with the facts of this case.  While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

30.   Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty pleas, and defendant will remain bound to

1  fulfill all defendant's obligations under this agreement.   Defendant
2  understands that no one -- not the prosecutor, defendant's attorney,
3  or the Court -- can make a binding prediction or promise regarding
4  the sentence defendant will receive, except that it will be within
5  the statutory maximum.

NO ADDITIONAL AGREEMENTS

7      31.   Defendant understands that, except as set forth herein,
8  there are no promises, understandings, or agreements between the USAO
9  and defendant or defendant's attorney, and that no additional
10 promise, understanding, or agreement may be entered into unless in a
11 writing signed by all parties or on the record in court.
12 ///
13 ///
14 ///

PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

32. The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

TRACY L. WILKISON
Acting United States Attorney


_____          7/6/2022
RANEE A. KATZENSTEIN                      _____
ALEXANDER B. SCHWAB                       Date
Assistant United States Attorneys


_____          7-5-2022
FONTRELL ANTONIO BAINES                   _____
Defendant                                Date


_____          7/5/2022
ASHLEY MAHMOUDIAN                         _____
DAVID WASSERMAN                          Date
Attorneys for Defendant
Fontrell Antonio Baines

///

///

///

CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety.  I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney.  I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.  No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement.  No one has threatened or forced me in any way to enter into this agreement.  I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charges and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_____          7-5-2022
FONTRELL ANTONIO BAINES                    Date
Defendant

///

///

///

<u>CERTIFICATION OF DEFENDANT'S ATTORNEY</u>

I am one of FONTRELL ANTONIO BAINES's attorneys.  I have carefully and thoroughly discussed every part of this agreement with my client.  Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.  To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of guilty pleas pursuant to this agreement.

_____        7.5.2022
ASHLEY MAMOUDIAN                        Date
DAVID WASSERMAN
Attorneys for Defendant
Fontrell Antonio Baines

**EXHIBIT A**

**STATEMENT OF FACTS**

**IN SUPPORT OF PLEA AGREEMENT**

Defendant FONTRELL ANTONIO BAINES, also known as "Nuke Bizzle" ("defendant") represents and admits that the following facts are true:

**MAIL FRAUD**

Background

At all times relevant to the charges in the Indictment in case number CR 20-522-MWF:

a.    California's Employment Development Department ("EDD") was the administrator of the unemployment insurance ("UI") benefit program for the State of California;

b.    On March 13, 2020, the President of the United States declared COVID-19 an emergency under the Robert T. Stafford Disaster Relief and Emergency Assistance Act.  As a result, Congress passed the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), which the President signed into law on March 27, 2020.  The CARES Act provided over $2 trillion in economic relief protections to the American people from the public health and economic impacts of COVID-19.

c.    Prior to the enactment of the CARES Act, to be eligible for UI administered by EDD, a person must have been employed and worked in California and received at least a certain amount of wages from an employer in the 18 months preceding his/her UI benefits claim.  Because of this requirement, self-employed

Read and Agreed to  *FB*

workers, independent contractors, and employees with insufficient earnings were not eligible to receive regular UI benefits.

d.   The CARES Act established a new program -- Pandemic Unemployment Assistance ("PUA") -- to provide unemployment benefits during the COVID-19 pandemic to people who did not qualify for regular unemployment insurance benefits including business owners, self-employed workers, independent contractors, and those with a limited work history who are out of business or have significantly reduced their services as a direct result of the pandemic.  UI benefits provided under the PUA program are sometimes referred to as PUA benefits.

e.   Under the PUA provisions of the CARES Act, a person who was a business owner, self-employed worker, independent contractor, or gig worker could qualify for PUA benefits administered by EDD if he/she had previously performed such work in California and was unemployed, partially unemployed, unable to work, or unavailable to work due to a COVID-19-related reason.

f.   Persons applying for PUA benefits did not need to submit any supporting documents to the EDD with their applications.  Claimants entered their total income for the 2019 calendar year on the application.  The stated income was used to pay the minimum benefits of $167 per week.  EDD could request documentation to provide proof of the stated income.

g.   A PUA claimant was required to answer various questions to establish his/her eligibility for PUA benefits.

2

Read and Agreed to  *7B*

The claimant was required to provide his/her name, Social Security Number, and mailing address.  The claimant was also required to identify a qualifying occupational status and COVID-19 related reason for being out of work.

h.   After it accepted a UI claim, including a claim submitted pursuant to the PUA program, EDD typically deposited UI funds every two weeks to an Electronic Bill Payment ("EBP") debit card administered by the Bank of America ("BofA"), which the claimant could use to pay for his/her expenses.  The EBP card was mailed via the U.S. Postal Service to the claimant at the address the claimant provided in his/her UI claim.

The Scheme to Defraud

From at least July 2020 through at least September 2020, defendant, knowingly and with the intent to defraud, participated in, and helped to execute, a scheme to fraudulently obtain UI benefits, including PUA benefits, from EDD and the United States Treasury, and to obtain money and property from EDD and the United States Treasury, namely, UI benefits, including PUA benefits, by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

To carry out the scheme, members of the scheme would file and cause the filing with EDD of fraudulent UI benefit claims, including PUA claims, in the names of other persons, including at least ten persons who had not authorized the scheme members to file such applications on their behalf or use their names and other identifying information on such applications.

3

Read and Agreed to *FB*

On the fraudulent UI claims, members of the scheme falsely stated and represented that the named claimants were self-employed barbers who had been negatively affected by the COVID-19 pandemic, thereby triggering eligibility for UI benefits under the PUA provision of the CARES Act.

On the fraudulent UI claims, members of the scheme falsely reported to EDD that the named claimants resided and worked in the State of California, including in Los Angeles County.

To the contrary, and as the scheme members then knew, many of the persons named as the claimants had no residential history in Los Angeles County or, indeed, anywhere in the State of California; had no employment history in Los Angeles County or anywhere in the State of California; and were not self-employed barbers. By falsely asserting that the claimants worked in the State of California, scheme members falsely represented that the named claimants were entitled to UI benefits administered by EDD when, as the members of the scheme then new, they were not.

As a result of the fraudulent UI benefit claims that the scheme members filed and caused to be filed, the EDD authorized BofA to issue EBP cards in the names of the named claimants.

The scheme members' filing of the fraudulent UI claims was reasonably foreseeable by defendant, who provided at least one of the addresses used by scheme members as the address for each of the named claimants to ensure that the scheme members received the UI benefits. The addresses provided by defendant to the members of the scheme in furtherance of the scheme included 1705 Carla Ridge, Beverly Hills, CA (the "Carla Ridge

4

Read and Agreed to _JB_

address"), which defendant began renting as his primary residence in July 2020.  Furthermore, defendant had access to mail at the 3750 W 2nd St. Apt. 6, Los Angeles, CA, address used by the schemers.  Defendant knew that, by providing the Carla Ridge address on the fraudulent UI claims, the members of the scheme would cause BofA to mail the EBP cards issued to the named claimants to these addresses, thereby enabling defendant and other members of the scheme to take possession of the EBP debit cards.

After he received EBP cards issued as a result of the fraudulent UI benefits claims that were submitted to EDD as part of the scheme, defendant used the cards and caused the cards to be used to withdraw the UI benefits funds that were provided based on the fraudulent applications.

As an example of the fraudulent UI claims that the members of the scheme submitted to EDD in furtherance of the scheme, on or about August 15, 2020, scheme members filed and caused to be filed an application for PUA benefits in the name of R.H.  The application stated that R.H. was unemployed as a result of the COVID-19 pandemic.  The application included an attestation that stated, "Your place of employment is closed as a direct result of the COVID-19 public health emergency."  The application contained R.H.'s name, date of birth, and Social Security Number, and identified his occupation as being a self-employed barber.  The application identified the Carla Ridge address as R.H.'s mailing address.

5

Read and Agreed to  *7B*

In fact, R.H. lived in Missouri; had never lived in California except for a brief period of time, ending in 2017, when he attended Santa Monica City College on a basketball Scholarship; had never worked in California; had never applied for UI benefits in California; and had never authorized anyone to use his name or personal identifying information to submit a PUA claim to EDD in his name.

Between September 20, 2020 and September 21, 2020, defendant used the EBP debit card issued as a result of the fraudulent PUA claim filed in R.H.'s name to withdraw approximately $2,500.

Through this scheme, members of the scheme caused approximately 92 fraudulent PUA claims to be filed with EDD resulting in attempted losses to EDD and the United States Treasury of approximately $1,256,108 and actual losses of at least approximately $704,760.  The filing of these claims was reasonably foreseeable to defendant as part of the scheme in which he participated and helped to execute.

Execution of the Scheme to Defraud

As an execution of this scheme, on or about August 19, 2020, scheme members caused an EBP debit card for an account in the name of R.H. ending in 2423 to be sent by the U.S. Mail from BofA to 1705 Carla Ridge, Beverly Hills, California, 90210. This mailing in furtherance of the fraudulent scheme in which he was participating was reasonably foreseeable to defendant.

///

6

Read and Agreed to _HB_

**FELON IN POSSESSION OF A FIREARM AND AMMUNITION**

On or about October 16, 2020, in Los Angeles County, within the Central District of California, defendant knowingly possessed and controlled a firearm and ammunition. Specifically, defendant, while at the residence located at 8228 Belgrave Place, Los Angeles, California, possessed a Glock, model 31, .357 caliber, semi-automatic pistol bearing serial number BPPA67, with fourteen (14) rounds of Sellier & Bellot, .357 SIG caliber ammunition marked with the headstamp "S&B 357 SIG."

The Glock semi-automatic pistol was manufactured by Glock, Inc., in Austria.  The Sellier & Bellot ammunition was manufactured in the Czech Republic.  Thus, the firearm and ammunition that defendant possessed and controlled in Los Angeles, California, on October 16, 2020, had all moved from a foreign nation to the United States at the time that defendant BAINES possessed them.

In addition, at the time defendant knowingly possessed the firearm and ammunition, he knew that he had been convicted of the following felony offenses, each punishable by a term of imprisonment exceeding one year: (1) Felon in Possession of a Firearm, in violation of Title 18, United States Code, Sections 922(g)(1) and 924(a)(2), in the United States District Court for the District of Nevada, in case number 2:14-cr-36-APG-VCF, on or about October 30, 2014; and (2) Unlawful Possession of a Controlled Substance with intent to sell/dihydrocodeinone, in violation of Tennessee C. A. 39017-417, in the Criminal/Circuit

Read and Agreed to _7B_

Court of Shelby County, Tennessee, in case number 10 4689, on or about July 11, 2011.

\* \* \*

I have read this STATEMENT OF FACTS IN SUPPORT OF PLEA AGREEMENT in its entirety.  I have had enough time to review this statement of facts and I have carefully and thoroughly discussed every part of it with my attorney.  I agree that this statement of facts is sufficient to support pleas of guilty to the charges described in the plea agreement and to establish the Sentencing Guidelines factors set forth in paragraph 16 of the plea agreement.

_____           7-5-2022
FONTRELL ANTONIO BAINES           Date
Defendant


I am FONTRELL ANTONIO BAINES's attorney.  I have carefully and thoroughly discussed every part of this statement of facts with my client and agree that it is sufficient to support a plea of guilty to the charge described in the plea agreement and to establish the Sentencing Guidelines factors set forth in paragraph 16 of the plea agreement.

_____           7·5·2022
ASHLEY MAHMOUDIAN           Date
DAVID I. WASSERMAN
Attorneys for Defendant
FONTRELL ANTONIO BAINES

8

Read and Agreed to _____